*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0431p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

TABATHA WHITE,

      *Petitioner-Appellee,*

    *v.*

JEWEL STEELE, Warden,

      *Respondent-Appellant.*

No. 08-5498

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 06-00428—William J. Haynes, Jr., District Judge.

Argued: October 16, 2009

Decided and Filed: December 21, 2009

Before: MARTIN, ROGERS, and COOK, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Francis R. Borger-Gilligan, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellant. Sumter L. Camp, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Elizabeth T. Ryan, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellant. Sumter L. Camp, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellee.

    COOK, J., delivered the opinion of the court, in which ROGERS, J., joined. MARTIN, J. (pp. 6-10), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

    COOK, Circuit Judge. Jewel Steele, Warden, appeals the district court's grant of a writ of habeas corpus to inmate Tabatha White. We reverse because, in its sufficiency-of-the-evidence review, the district court failed to accord the deference due to the judgment of the Tennessee Court of Criminal Appeals.

1

## I.  BACKGROUND

The state court opinion from White and co-defendant Leon Robins's direct appeal adequately sets forth the facts underlying the conviction, *Tennessee v. Robins*, No. M 2001-01862-CCA-R3-CD, 2003 WL 1386835, at *1–4;  2003 Tenn. Crim. App. LEXIS 238, at *2–12 (Tenn. Crim. App. Mar. 20, 2003), and we draw from those facts in highlighting the issue on review.  The conflict began when White gave Eugene Simmons ten dollars to buy cocaine.  The Tennessee Court described her as "mad."  When Simmons failed to return with either the drugs or the money, White looked for him and instructed others to do the same. White, accompanied by Robins, confronted Simmons after a phone call alerted White to his location.  She approached Simmons and angrily demanded  her money.  Immediately thereafter, Robins pulled a handgun and shot Simmons several times at close range, killing him.  The State of Tennessee indicted and tried White and Robins together.  A jury convicted White of first degree murder under Tennessee's aiding and abetting statute, which assigns criminal responsibility for the conduct of another if: "(2) [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ."  Tenn. Code Ann. § 39-11-402(2).

White received a life sentence.  After an unsuccessful direct appeal, she brought an action under 28 U.S.C. § 2254 seeking to set aside her murder conviction, claiming that the proof used to convict her failed to meet constitutional sufficiency standards under *Jackson v. Virginia*, 443 U.S. 307 (1979).  The district court agreed, granting her a writ of habeas corpus. *White v. Steele*, No. 3:06-0428, 2008 U.S. Dist. LEXIS 29198 (M.D. Tenn. Apr. 8, 2008).

## II.  ANALYSIS

*Jackson v. Virginia* holds that a conviction with insufficient evidence violates the defendant's federal due process rights.  443 U.S. at 316.  To determine whether sufficient evidence supports a particular conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  The prosecution lacks an "affirmative duty to rule out every hypothesis except that of guilty

beyond a reasonable doubt . . . ." *Id.* at 326. Thus, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 established a further layer of deference that federal courts must accord when reviewing state prisoners' habeas petitions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The district court considered White's case before *Brown* articulated this two-layer deferential standard. We must therefore answer the question posed by *Brown* as the second

layer of deference—whether the Tennessee Court of Criminal Appeals unreasonably applied federal law in *its* conclusion that a rational trier of fact could find White guilty beyond a reasonable doubt from the evidence introduced at trial. *Id.*; *Smith v. Romanowski*, No. 07-1578, 2009 WL 1884451, at *4 (6th Cir. Jul. 1, 2009). "The question 'is not whether a federal court believes the state court's determination . . . was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

After detailing the evidence against White, the state court held that "[a] jury could reasonably infer from this evidence that she shared the criminal intent to kill the victim." *Robins,* 2003 WL 1386835, at *6. The conflict between White and Simmons, not Simmons and Robins, led to the shooting. Given that the jury heard evidence of White's motive, efforts to locate Simmons, outburst at Simmons at the scene, and arrival with Robins, we cannot say that the Tennessee Court of Criminal Appeals unreasonably determined that a rational trier of fact could infer White's intent. Her successful efforts to locate Simmons satisfies the statutory requirement of aiding Robbins in the murder.[1]

*State v. Ball*, 973 S.W.2d 288 (Tenn. Crim. App. 1998), does not require a different conclusion. *Ball* explained the circumstances that support attaching criminal responsibility:

> Presence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which one's participation in the crime may be inferred. No particular act need be shown. It is not necessary for one to take a physical part in the crime. Mere encouragement of the principal is sufficient.

*Id.* at 294 (internal citation omitted). The Tennessee Court of Criminal Appeals explicitly considered White's case in light of *Ball* and found the evidence sufficient to

---

[1]The dissent claims that this conclusion cannot fit with our past opinions in sufficiency cases. Yet White's efforts to locate Simmons prior to the killing distinguishes this case from *Hopson v. Foltz*, 818 F.2d 866, at *2 (Table), 1987 U.S. App. Lexis 6596, at *5 (6th Cir. May 20, 1987), where the defendant took no actions prior to the killing. Furthermore, unlike in *Brown v. Palmer*, 441 F.3d 347, 353 (6th Cir. 2006), where the only evidence indicated that the defendant had no prior relationship with the victim or the shooter, White's overt act in support of the later killing provided aid to the shooter and offered an additional piece of evidence from which the jury could infer intent.

support the conviction. The fact that the state offered no direct evidence that White accompanied the perpetrator after the murder does not mean that the evidence failed to meet the requirements of *Ball*. *Ball* merely states that prosecutors can use presence and companionship to prove liability—*Ball* does not require presence and companionship. The state court interpreted Tennessee law to hold the facts of this case sufficient for a jury to infer White's intent and participation. Courts must draw a difficult line between inference and speculation, and when a state court draws a reasonable one, we defer to its judgment.

When reviewing habeas claims by state prisoners, federal courts may not reinterpret state law. "Generally speaking, federal habeas corpus is not the proper vehicle for state prisoners to seek review of issues of state law. State courts, after all are the final arbiters of the state law's meaning and application and [the Sixth Circuit] is not the appropriate forum to adjudicate such issues." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007) (internal quotations and citations omitted). Permitting Tennessee to define the contours of its own law, and applying the double-layered deference appropriate in this case, we cannot find that the state court unreasonably applied *Jackson v. Virginia*.

## III.  CONCLUSION

Because White's state court proceedings did not unreasonably apply or rule contrary to Supreme Court law, we reverse the decision of the district court.

_____

**DISSENT**

_____

BOYCE F. MARTIN, JR., Circuit Judge, dissenting.   Tabatha White was convicted of aiding and abetting[1] Leon Robins in the first-degree premeditated murder of Eugene Simmons, and was sentenced to life in prison.   However, the state offered no evidence that White knew Robins was even armed, much less that she intended to aid in or benefit from Simmons's murder or even knew that Robins intended to kill Simmons.   Instead, the state proved nothing more than that White was mad at Simmons and arrived at and fled the scene with Robins.   Using these facts to infer that White knew of and was complicit in Robins's plan to kill Simmons amounts to nothing more than speculation and is thus not constitutionally sufficient evidence to support the conviction. I believe that the district court properly granted White a writ of habeas corpus under these facts, so I respectfully dissent.

**I.**

I generally agree with the majority's statement of the law regarding sufficiency of the evidence claims on habeas review of state convictions.   To grant relief, we must find that no rational trier of fact could have found the elements of the crime to have been established beyond a reasonable doubt, resolving all reasonable conflicting inferences in favor of the jury's guilty verdict and giving deference to the state court's sufficiency analysis as long as it was reasonable.   *Jackson v. Virginia*, 443 U.S. 307, 329, 326 (1979); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).   However, I disagree with the majority's application of this general legal rule to the facts of this case.

---

[1] Technically, White was convicted of violating section 39-11-402(2) of the Tennessee Code, which is titled "criminal responsibility for conduct of another."   This statute is the functional equivalent of an aiding and abetting statute.   Because "aiding and abetting" is more familiar to readers and significantly less awkward than "criminal responsibility for conduct of another," I refer to White's conviction as aiding and abetting.

Tennessee's aiding and abetting statute provides that:

A person is criminally responsible for an offense committed by the conduct of another, if:

. . .

> **(2)** Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense;

Tenn. Code Ann. § 39-11-402(2). In this case, the reference "offense" is first-degree premeditated murder, so White must have intended to promote or assist Robins in murdering Simmons or must have intended to benefit from the proceeds or results of Robins's premeditated murder of Simmons. This, of course, requires that White knew that Robins was going to try to murder Simmons before Robins fired the gun. The statute also requires an overt act by White in the form of soliciting, directing, aiding, or attempting to aid Robins in his murder of Simmons.

The facts show that: (1) White had given Simmons ten dollars to buy cocaine; (2) that she was mad because Simmons still had her money and had not procured the cocaine; (3) that White had been looking for Simmons; (4) that, upon learning of Simmons's whereabouts, White, accompanied by Robins, approached Simmons and demanded to know "where her mother fucking money was"; and (5) that Robins shot Simmons immediately after these words left White's mouth. There is no evidence that White had previously expressed a desire or intent to harm or kill Simmons and no direct evidence that White was even aware that Robins was armed.

In denying habeas relief on these facts, I believe that the majority loses sight of the statute's repeated reference to the predicate offense: Robins's premeditated murder of Simmons. These facts simply do not support the conclusion that White knew that Robins intended to kill Simmons or that White intended to benefit from Simmons's death. One could infer from these facts that White and Robins shared a common intent to confront or threaten Simmons, but the statute requires that both White and Robins have shared an intent to kill Simmons. Perhaps it would be reasonable to *speculate* from

these facts that, as they approached Simmons, White and Robins were on the same page as far as his demise, but I do not find it reasonable to *infer* an element of the offense of aiding and abetting on the basis of mere speculation.  Indeed, our cases repeatedly distinguish between speculation, which may be perfectly reasonable but nevertheless constitutionally insufficient to support a conviction, and constitutionally permissible inferences.  *See, e.g.*, *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008) (stating, in a habeas case reviewing a state court conviction, that "[a]lthough circumstantial evidence alone can support a conviction, there are times that it amounts to only a reasonable speculation and not to sufficient evidence."); *Parker v. Renico*, 506 F.3d 444, 452 (6th Cir. 2007) ("While stringent, AEDPA's standard is not insurmountable. . . . [W]e continue to distinguish reasonable speculation from sufficient evidence . . . in establishing that the state court's application of federal constitutional law as set forth in *Jackson* . . . was objectively unreasonable.").

Additionally, in seeking to find more cover for its decision to reverse the district court, the majority erroneously states that the "district court considered White's case before *Brown* [*v. Konteh*, 567 F.3d 191 (6th Cir. 2009)] dictated this two-layer deferential standard." *Supra* at __.  While it is factually correct that the district court granted habeas relief before *Brown* was issued, it is incorrect to imply that this somehow makes any difference.  *Brown* did not make any new law—that we must defer to both the verdict and to the state appellate court's application of federal law in section 2254 sufficiency of the evidence claims is not a new concept.  *See Brown*, 567 F.3d at 205 (citing cases from 1979 and 1993 and the plain text of section 2254(d)(2) for the proposition that we must apply two layers of deference); *Newman*, 543 F.3d at 801 (Sutton, J., dissenting) (discussing a "double dose of deference" in sufficiency of the evidence cases).  But in any event, a case that relies on speculation and assumption to establish the critical element of the offense is a bad case no matter how many layers of deference one piles on the analysis.

**II.**

In addition to the facts of this case requiring affirming the district court, I also believe that our precedents require that we grant habeas relief. In *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), a section 2254 sufficiency of the evidence case, we found there to be insufficient evidence of aiding and abetting carjacking. There, (1) the assailant arrived at the scene in Brown's car that Brown was driving; (2) Brown stared at the victims before and while the assailant was firing a gun, taking the victims' car and driving it away; and (3) Brown tried to flee the scene himself. *Id.* at 349. In short, we found that allowing the inference that Brown intentionally assisted in the carjacking from the facts that Brown was present at the scene and had some acquaintance with the assailant "quite speculative." *Id.* at 351. We therefore affirmed the district court's grant of habeas relief.

In an unpublished decision, *Hopson v. Foltz*, 818 F.2d 866 (Table), 1987 U.S. App. Lexis 6596 (6th Cir. May 20, 1987),[2] we found insufficient evidence of aiding and abetting murder where the evidence showed:  (1) that the petitioner and victim had argued shortly before the shooting; (2) that the petitioner was present at the shooting; and (3) that the petitioner may have known that the assailant intended to harm the victim. *Id*. at *2. In light of this evidence, which is strikingly similar to the facts of this case, we stated that "animus towards the victim cannot be construed as providing encouragement to the principal." *Id.* at *5.

I do not see how one can square our decisions to grant habeas relief in *Palmer* and *Hopson* with the decision to deny habeas relief in this case. If neither *Palmer* nor *Hopson* contained sufficient evidence to support an aiding and abetting conviction, then we should not treat this case any differently. Similar to *Palmer* and *Hopson*, the evidence in this case shows that White was present at the scene, was acquainted with and arrived with the actual assailant, and was angry with the victim. However, there is

---

**2**Alhough *Hopson* is a pre-AEDPA case, the *Palmer* opinion cites *Hopson* in support of its decision. Thus, *Hopson*'s analysis and precedential value is unaffected by the intervening passage of AEDPA.

neither direct evidence nor circumstantial evidence strong enough to support a reasonable inference that White knew or intended that Robins shoot Simmons or that White knowingly took any action in support or encouragement of Robins shooting Simmons.[3] Because this case is not materially distinguishable from our prior cases, I believe that we really have no other option than to affirm.

I respectfully dissent.

---

[3]The majority attempts to distinguish this case from *Palmer* and *Hopson* in a footnote, so I respond in kind. I find the attempt unpersuasive. Of course there will be factual distinctions from case to case, but not all differences are material. I read *Palmer* and *Hopson* to be materially indistinguishable from this case in that all three seek to allow an inference of intent to aid and abet from what is best described as mere coincidence. Unfortunately, the only real difference in the three cases is that we rejected such weak evidence in *Palmer* and *Hopson* but accept it today.