MARTHA CRAIG DAUGHTREY,
Circuit Judge, concurring in the judgment.
A separate concurring opinion that agrees only with the result reached by a majority of one’s colleagues is a judicial construct both unusual and, generally, unwelcome. I would not so burden the resolution of this appeal if I were not concerned about the majority’s imprecise application of the standards of review in this case, caused — it would appear — by a tendency to engage in an unnecessarily elaborate re-examination of the evidence from both the original jury trial and the evidentiary hearing in the district court.
As the majority recounts at great length, Donald Eugene Brooks was convicted of murder in the death of Joseph J. Wisniewski, who was found with his throat slit at the side of Barge Point Road in Clarksville, Tennessee, in October 1994. What the majority also notes, but fails to emphasize appropriately, is that following the jury verdict in state court finding Brooks guilty of aggravated murder and three related offenses, the only issue he raised on direct appeal was the legal sufficiency of the convicting evidence. The Tennessee Court of Criminal Appeals reviewed the trial testimony witness by witness, examining at length that of the state’s chief witness, Edwin Lunceford, the accomplice who had been with defendant Brooks for much of the day of Wisniewski’s murder. The state court’s opinion set out Lunceford’s testimony in detail, along with the testimony of various other prosecution witnesses who were called by the state for the purpose of corroborating Lunceford’s narrative. The jury also heard tape-recordings of Lunceford’s conversations with Brooks, made without Brooks’s knowledge after Lunceford came forward voluntarily and confessed his part in the offense to police. Although the recordings do not contain an outright confession by Brooks, the statements were clearly incriminating. See State v. Brooks, No. 01C01-9703-CC-00099, 1998 WL 299267, at *1-3 (Tenn.Crim.App.June 9, 1998).
The appellate court’s opinion also summarized the testimony of Mike Nelson, who was Brooks’s cellmate and who plays a prominent role in the majority opinion in this appeal. In that summary, the court commented on Nelson’s impeachment, noting that “Nelson admitted convictions of larceny from a person, grand larceny and escape,” id. at *4, n. 7, and actually conceded on cross-examination that he was a “professional snitch.” In addition, one of the law enforcement officers involved in the investigation of the murder charge against Brooks testified that “he had known Michael Nelson for about fifteen years and did not believe him to be truthful.”
With Nelson’s testimony thus fatally damaged, if not destroyed, Brooks’s principal line of defense at trial consisted of an effort to demolish Lunceford’s credibility, but to no avail. As the Court of Criminal Appeals observed:
*899 [T]he record reflects that defense counsel ably and vigorously cross-examined Lunceford and assailed his credibility through other witnesses. Additionally, the state’s evidence at trial supported its theory of the defendant’s guilt of each of the four crimes of which he was ultimately convicted, although the defendant brought forward some evidence of an alibi. Thus, the jury had before it evidence which would allow it, on one hand, to convict the defendant, or on the other, to acquit him. The decision was one which hinged on the jury’s assessment of the credibility of the ivitnesses, particularly Edwin Lunceford, and the weight and value which should be afforded the evidence. The decision was wholly one for the jury to make as trier of fact. Unfortunately for the defendant, the jury’s discharge of its function resulted in accreditation of Lunceford’s testimony and weighing and evaluating the state’s evidence over that brought forward by the defense. Clearly, a rational trier of fact, such as the jury at the defendant’s trial, could find the defendant guilty beyond a reasonable doubt of each of the four crimes on the evidence presented.
Id. at *6 (emphasis added).
Because Brooks was found guilty by a jury, we are constrained to apply what has been described as a “double layer of deference” in our review of the district court’s denial of habeas relief. See White v. Steele, 602 F.3d 707, 710 (6th Cir.2009), cert. denied, — U.S.-, 131 S.Ct. 130, 178 L.Ed.2d 78 (2010). In reviewing the legal sufficiency of the convicting evidence on direct appeal, the Tennessee Court of Criminal Appeals was required by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to “view[] the evidence in the light most favorable to the prosecution” and affirm if “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. 2781 (emphasis in original). At this first level — deference to the jury’s verdict — the Jackson standard is so demanding that “[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a ‘nearly insurmountable hurdle.’ ” United States v. Oros, 578 F.3d 703, 710 (7th Cir.2009) (citation omitted). Moreover, “under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of [habeas] review.” Schlup v. Delo, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Added to this already heavy burden are the limitations of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996), which serve to create a second level of deference. Those standards permit us to overturn a state court’s decision only if that court failed to apply the correct constitutional precedent or when the court’s application of precedent was “objectively unreasonable” and not merely “incorrect or erroneous.” Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).
The import of this double level of deference is significant in this case. The Tennessee Court of Criminal Appeals found that Brooks’s conviction withstood his challenge to the legal sufficiency of the evidence, based on the extensive testimony of Edwin Lunceford, which the court credited. That testimony clearly established the essential elements of each of the statutory offenses for which Brooks was convicted, based on factual determinations that are presumptively correct. See Brown v. Konteh, 567 F.3d 191, 205 (6th Cir.2009) (“[E]ven were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court’s suffi *900 ciency determination as long as it is not unreasonable.”), cert, denied, — U.S. -, 130 S.Ct. 1081, — L.Ed.2d - (2010). Although it is true, as the petitioner now argues, that the legal questions controlled by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), must be reviewed de novo because there is no prior state-court ruling on those issues, see Dyer v. Bowlen, 465 F.3d 280, 284 (6th Cir.2006), they must also be seen in context, i.e., whether the Brady violations did anything to undermine Lunceford’s testimony and the evidence introduced to corroborate that testimony. As the district court noted, the evidence of Brooks’s guilt, as established by the record and accredited by the jury, was overwhelming. Put simply, it is immaterial that Nelson may have been schizophrenic and that his testimony about Brooks’s jail cell confession was therefore suspect. The majority’s labored exposition of the historical facts is likewise immaterial.
Moreover, in this case we actually have a third level of deference, because the district court heard new testimony offered by Brooks in connection with his constitutional claims, found that it was not credible and, therefore, not material, and held that it could not serve as the basis for the issuance of a writ of habeas corpus. That credibility determination is, of course, not subject to review on appeal. See United States v. Hilliard, 11 F.3d 618, 620 (6th Cir.1993) (“In addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the [fact-finder].”) (citing United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989)). Moreover, it is well-established that:
If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.
Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). As a result, the record wholly fails to establish that Nelson perjured himself at the state trial, or that members of the prosecutors’ office solicited false testimony from Nelson.
The district court also found that the additional, undisclosed evidence about Nelson’s background was insufficient to establish prejudice because the jury was fully aware of Nelson’s reputation as a “professional snitch,” his status as a convicted felon, and his lack of credibility in the eyes of law enforcement, all leading to his impeachment by defense counsel at Brooks’s trial. Nor does the speculation about the ephemeral “Boston Rick” or the presence or absence of his fingerprints rise to the level of proof.
That, in my judgment, should be the end of our review of Brooks’s habeas petition. Put bluntly, I do not think it serves any purpose to engage in elaborate parsing of the facts, as the majority has done in this case, because it suggests to lawyers and potential habeas litigants that we are reweighing the evidence in the record de facto if not de jure. Thus, I would hold simply that the evidence credited by the jury established Brooks’s guilt and that the district court did not err in refusing to grant habeas relief after determining that the evidence offered in support of Brooks’s Brady claims was not creditable and was, therefore, insufficient to support the issuance of a writ.